### Funk v. Montgomery AMC/Jeep/Renault
*[Cite as 4 AOA 15]*

*Case No. C-890178*
*Hamilton County (1st)*
*Decided June 13, 1990*

cost to the consumer.

*Simon Groner, Esq., 216 East Ninth Street, Second Floor, Cincinnati, Ohio 45202, for Plaintiff-Appellant.*

*Richard J. Valleau, Esq., 1700 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202, for Defendant-Appellee Montgomery AMC/Jeep/Renault.*

*Richard M. Goehler, Esq., 2500 Central Trust Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for Defendant-Appellee American Motors Sales Corp.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, and the briefs and arguments of counsel.

In this appeal we are concerned with a dispute that arose after the plaintiff-appellant, Bev

Funk, purchased a new 1982 Renault Le Car imported by the defendant-appellee, American Motors Sales Corp. ("AMSC"), from the defendant-appellee, Montgomery AMC ("MAMC"). After encountering mechanical difficulties with the cooling and electrical system for the second consecutive summer that she had owned the car, the appellant brought suit in the court below to revoke her acceptance of the automobile. Her suit further alleged that the car's record of performance constituted a breach of an implied warranty of merchantability, and that the appellees had violated state and federal laws regarding misrepresentation and deceptive sales practices.

The appellant's sole assignment of error asserts that the trial judge erred by withholding the case from the jury and granting directed verdicts in favor of the appellees. As the appellant litigated five different claims below,[1] the propriety of a directed verdict in favor of either appellee on each claim must be considered.

## I

The appellant's claim to revoke acceptance of the automobile was based upon R.C. 1302.66 [U.C.C. Sec. 2-608]. This section requires, *inter alia*, that revocation must occur within a reasonable time after discovery of the nonconformity and before any substantial change in the condition of the goods. In granting the directed verdicts in the case at bar, the trial judge expressed his opinion that the appellant's attempt at revocation came "far too late" because age and mileage had already substantially impaired the value of the car. He stated further that he did not discern "any evidence that could involve * * * American Motors Sales Corporation in that situation."

The determination of whether a buyer has given a seller an opportunity to cure or reasonable notice of revocation of acceptance is ordinarily a matter left to the trier of fact. *Buckeye Trophy, Inc. v. Southern Bowling & Billiard Supply Co.* (1982), 3 Ohio App. 3d 32, 34, 443 N.E.2d 1043, 1046. Thus, the decision of the trial judge here to withhold this issue from the jury was proper only if reasonable minds, construing the evidence most strongly in favor of the plaintiff, would inevitably have come to the conclusion that revocation was "far too late" on the state of the record. *Strother v. Hutchinson* (1981), 67 Ohio St. 2d 282, 423 N.E.2d 467.

Clearly, the evidence of record, when construed most strongly in the appellant's favor, permits reasonable debate on when she first revoked acceptance of her car and whether revocation was timely under the circumstances. There is evidence that appellant, as early as October 1983, orally communicated to Mr. Whitton, MAMC's representative, that she was dissatisfied with the car and wanted MAMC to take it back. In this regard we note that prior Ohio decisions have held that revocation can be oral or implied from conduct. *Lanham v. Solar America of Cincinnati, Inc.* (1986), 28 Ohio App. 3d 55, 58, 501 N.E.2d 1245, 1248; *Konicki v. Salvaco, Inc.* (1984), 16 Ohio App. 3d 40, 43, 474 N.E.2d 347, 350. Furthermore, even if revocation is determined not to have taken place until a year later, the reasonable-time requirement must include the time beyond which the seller is attempting to adjust, or cure, the problem. *Lanham, supra*, at 57, 501 N.E.2d at 1248. In this case consideration must also be given to the apparent seasonal nature of the problems which the car demonstrated. Cf. *Buckeye Trophy, supra*, at 34, 443 N.E.2d at 1046. Thus, the age and mileage of the appellant's car at the time of revocation is not necessarily dispositive. See *McCullogh v. Bill Swad Chrysler-Plymouth, Inc.* (1981), 5 Ohio St. 3d 181, 449 N.E.2d 1289.

We hold, therefore, that the trial judge erred when he directed a verdict in favor of the dealer, appellee MAMC, on appellant's claim to revoke acceptance. The issue arises, however, whether the remedy of revocation of acceptance was also available against appellee AMSC, as the importer/manufacturer of the Le Car. Ohio decisions have required that a direct buyer-seller relationship exist in order for the remedy of revocation of acceptance to be applicable. *Arrow International, Inc. v. Rolls-Royce Motors, Inc.* (Apr. 17, 1986), Cuyahoga App., Nos. 50305, 50341, unreported; *Noice v. Paul's Marine and Camping Center, Inc.* (1982), 5 Ohio App. 3d 232, 451 N.E.2d 528; *Voytovich v. Bangor Punta Operation, Inc.* (C.A. 6, 1974), 494 F.2d 1208. The requirement of privity is based upon the unique nature of the claim which, unlike one for breach of warranty, seeks to put the plaintiff in the same position as if he had rejected the goods at the time of the initial delivery. *Noice, supra*, at 235, 951 N.E.2d at 532.

In *Arrow International, supra*, the Eighth District Court of Appeals fully discussed the impact of these decisions in the context of an action to revoke acceptance against both a car dealer and the car manufacturer. The court first noted the general rule that car dealers are purchasers from the manufacturer, and only agents insofar as they have the authority to extent to

their customers the limited warranty of the manufacturer. *Arrow International, supra,* slip op. (Lexis) at 7 (citing Restatement [Second], 1 Agency section 14J, comment e; 1 Williston, Sales [4th Ed.] section 2-1). The court then concluded that, unless the record also showed that the dealer was the agent of the manufacturer in the sale of the automobile, the absence of privity between the manufacturer and the customer precluded an action to revoke acceptance against the manufacturer. *Arrow International, supra,* slip op. (Lexis) at 9.

The question evolves, therefore, whether there was sufficient evidence of record for the jury to have found that MAMC was acting as the agent of AMSC specifically as to the sale of the Le Car to the appellant. In order for an agency relationship to exist, the evidence must show that the principal either held the agent out or allowed the agent to hold himself out as possessing such authority, and the person dealing with the agent must have known, or had reason to believe, that the agent possessed the necessary authority. *Mancino v. Capital National Bank* (May 7, 1981), Cuyahoga App. No. 43061, unreported.

Both appellees agreed on the record that MAMC was AMSC's agent in administering the latter's limited warranty. Mr. Voorheis, a representative for AMSC, became directly involved in efforts to repair the appellant's car, and AMSC continued, even past the expiration of its limited warranty, to reimburse MAMC for repairs done to the appellant's car. However, beyond this evidence, which relates only to the dealer's agency for the purpose of administering the manufacturer's warranty, we do not find a sufficient basis for the jury to have reasonably concluded that an agency relationship existed between MAMC and AMSC as regards the sale of the vehicle. Agency for the one purpose does not necessarily imply agency for the other. Hence, we hold that the trial court's granting of a directed verdict was proper on the appellant's claim to revoke acceptance against AMSC.

II.

The second claim which the appellant litigated below was breach of an implied warranty of merchantability. In *Goddard v. General Motors Corp.* (1979), 60 Ohio St. 2d 41, 396 N.E.2d 761, the Ohio Supreme Court held that when a car is so defective that the limited warranty of repair and replacement fails of its essential purpose, the buyer may institute an action to recover damages for breach of an implied warranty under R.C.

1302.88. Based upon the history of repair problems encountered by the appellant, we hold that a reasonable mind could have concluded that the seller proved unable to effectively repair or replace defects in her car, thus depriving her of the benefit of the limited warranty.

Moreover, the availability of this claim against both MAMC and AMSC is evident by the procedural posture of *Goodard* and a subsequent case, *Nearhouse v. Wolkswagen of America, Inc.* (1987), 42 Ohio app. 3d 42, 536 N.E.2d 45. In *Goddard* and *Nearhouse* both the manufacturer and the dealer were held potentially liable for breach of an implied warranty in the sale of an automobile. Such a result is consistent with prior Ohio law eliminating the requirement of privity of contract in actions for breach of express warranty against the manufacturer. See *Inglis v. American Motors Corp.* (1965), 3 Ohio St. 2d 132, 209 N.E.2d 583.

We conclude, therefore, that the trial court erred when it directed a verdict in favor of both appellees on the claim for breach of an implied warranty.

III.

The third claim litigated by appellant was for a violation of the Magnusson-Moss Warranty Act, section 2301 *et seq.*, Title 15, U.S. Code. The Act creates a cause of áction against suppliers and warrantors cognizable in state court for breach of both written and implied warranties. Section 2310(d)(1), Title 15, U.S. Code. While it appears undisputed that the appellees acted in good faith to repair the appellant's car, and have even absorbed the costs of repair past the warranty period, it is also clear that reasonable minds could conclude that the car's record of poor performance constituted a breach of implied warranty under *Goddard, supra.* Hence, we hold that the trial judge erroneously granted a directed verdict in appellees' favor on this claim.[2]

IV.

The appellant's fourth claim alleged material misrepresentation under R.C. 1302.95. Although alluded to in the appellant's brief, the specific acts or conduct underlying this claim were not separately delineated. We infer, however, that the gist of the appellant's argument is that, since her Le Car did not perform as an automobile should, its condition was misrepresented to her when she bought it, and thereafter when the repair shop returned it to her as repaired when it was not.

As set forth by the court in *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54,

514 N.E.2d 709, 712, the elements of actionable fraud or misrepresentation are:

"(a) a representation or, where there is a duty to disclose, the concealment of a fact material to the transaction;

"(b) knowledge of the falsity on the part of the person making the representation or utter disregard and recklessness as to whether it is true or false;

"(c) intent to mislead another into relying on the misrepresentation;

"(d) justifiable reliance by the party claiming injury; and

"(e) resulting injury proximately caused by the reliance."

The burden of proof is generally upon the plaintiff to prove these elements by a preponderance of the evidence. However, with regard to the element of scienter, if the plaintiff establishes that the defendant made misstatements of fact under circumstances in which he should have known the true facts, then the burden switches to the defendant to show that he justifiably believed in the truth of his statements. *Pumphrey v. Quillen* (1956), 165 Ohio St. 343, 135 N.E.2d 328; *Drew v. Christopher Constr. Co.* (1942), 140 Ohio St. 1, 41 N.E.2d 1018.

Our review of the record fails to disclose sufficient evidence on which a jury could find that either MAMC or AMSC acted fraudulently toward the appellant. Certainly, the evidence fails to show that either MAMC or AMSC knowingly sold, or intended to sell, the appellant a defective car. Nor does the evidence show that the attempts of the MAMC and AMSC to rectify the problems with the car were fraudulent. Hence, we conclude that the trial judge correctly withheld this claim from the jury.

## V.

The appellant's fifth and final claim alleges that certain conduct of the appellees constituted deceptive sales practices under R.C. 1345.02.

R.C. Chapter 1345, the Ohio Consumer Sales Practices Act, sets forth the standards of conduct for the supplier of consumer goods. R.C. 1345.02 makes actionable certain practices which it characterizes as deceptive. It is important to note that violation of R.C. 1345.02 does not require either intent or knowledge on the part of the alleged perpetrator; rather, it is sufficient that the conduct complained of "has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts." *Brown v. Bredenbeck* (1975), 2 Ohio Op. 3d 286, 287; see,

also, *Thomas v. Sun Furniture & Appliance Co.* (1978), 61 Ohio App. 2d 78, 399 N.E.2d 567.

"It is clear that the basic test is one of fairness as the act need not rise to the level of fraud, negligence, or breach of contract." *Thompson v. Dixon Lincoln Mercury, Inc.* (Apr. 27, 1983), Butler App. No. 82-11-0109, unreported.

The first allegedly deceptive practice of which the appellant complains concerns the installation of the air conditioner in her car. The appellant's car did not come with factory-installed air conditioning. However, after she advised MAMC that she wanted a car equipped with this feature, the car was sold to her with an air conditioner as part of the purchase price, based upon the understanding that one would be later installed. Approximately one month after she took possession of the car, she was directed by MAMC to take her car to Century Tire, where a Behr air-conditioning unit was installed in her car.

The record establishes that there is presently a dispute between MAMC and AMSC over whether the Behr model was authorized by AMSC for installation in the appellant's car. AMSC maintains that the Behr model was not authorized and was therefore not covered by the Le Car's warranty. However, neither MAMC nor AMSC disputes that the appellant was reasonable in believing that the Behr air conditioner was covered by the Le Car's warranty. The appellant testified that she was never told one way or the other whether the air conditioner was authorized.

The appellant specifically contends that this set of circumstances constitutes a violation of R.C. 1345.02(B)(1) and (9). These sections define as a deceptive sales practice an act which represents:

"(1) That the subject of a consumer transaction has sponsorship, approval * * * that it does not have;

"* * *

"(9) That the supplier has a sponsorship, approval, or affiliation that he does not have."

At least one court has held that the legislature in enacting R.C. 1345.02 only intended to reach affirmative representations of inaccurate or false information, not failure to disclose. *Lintermoot v. Brown* (Aug. 2, 1988), Van Wert App. No. 15-86-25, unreported.

While we do not go so far as to read R.C. 1345.02 as meaning that a failure to disclose can never amount to a misrepresentation, we are not convinced that the circumstances here rise to a

level of unfairness cognizable by the statute. As noted in *Thompson v. Dixon Lincoln Mercury, supra,* the basic test is one of fairness. In this regard, we note that, although AMSC has advanced legal arguments at trial and on appeal which seek to relieve it of liability based on the theory that it is not responsible for problems caused by an unauthorized air conditioner, the record indicates that AMSC never stopped reimbursing the dealer for repairs on this theory, or otherwise acted to the appellant's detriment. Similarly, there is no evidence that this dispute between MAMC and AMSC ever caused MAMC to act differently toward the appellant. Indeed, there is no evidence of record of when, exactly, the dispute over the Behr air conditioner's authorization surfaced between MAMC and AMSC, nor is there any evidence that the dispute itself has caused the appellant any additional out-of-pocket expenses.[3]

We hold, therefore, that while this litigation may have occasioned a dispute between MAMC and AMSC over the propriety of installing a certain air conditioner in the appellant's car, there is insufficient evidence of record for the trier of fact to find that the circumstances surrounding the installation of the air conditioner constituted a deceptive act aimed toward the appellant.

The second allegedly deceptive practice of which the appellant complains is the failure of MAMC to provide her with formal work orders and itemized lists of repairs, and to tender any replaced parts for certain repair work which was done by MAMC at no cost after the original warranty period had expired. MAMC's representative, Mr. Whitton, explained at trial that these items were not tendered because either MAMC or AMSC was expected to absorb the cost or repair. The appellant argues that the jury could have rejected this explanation. However, given the fact that even the appellant herself conceded at trial that MAMC and AMSC had always dealt with her in good faith, we find no basis in the record for the jury to have rationally concluded that Mr. Whitton's explanation was duplicitous.

The question remains, however, whether, its good faith notwithstanding, MAMC was still legally obligated to provide these items. The pertinent provisions are found in Ohio Adm. Code 109:4-3-13. This section is made applicable to a "consumer transaction involving the performance of either repairs or any service involving a motor vehicle where the anticipated cost exceeds twenty-five dollars * * *." We interpret this section to mean where the anticipated cost to the consumer exceeds twenty-five dollars. Hence, in the case *sub judice,* where there was no anticipated cost to appellant for the repairs at issue, and considering the special circumstances in which MAMC and AMSC were making cost-free repairs past the warranty period, we conclude that the MAMC's failure to tender formal work orders, lists of repairs, and replacement parts to the appellant did not constitute a sufficient basis to find a deceptive sales practice.

We hold, therefore, that the trial court correctly directed verdicts in favor of the appellees on that part of the appellant's complaint alleging deceptive sales practices.

In sum, the appellant's assignment of error is sustained with regard to her claim for revocation of acceptance against appellee MAMC, and her second and third claims for breach of implied and express warranties against both appellees. The assignment of error is overruled, however, with regard to her claim to revoke acceptance against AMSC and her claims for fraud and deceptive sales practices against both appellees. The judgment of the Hamilton County Court of Common Pleas is reversed with respect to those claims on which a directed verdict was erroneously granted and the case is remanded to that court for further proceedings consistent with this decision. In all other respects, however, the judgment is affirmed.

*Judgment affirmed in part,*
*reversed in part, and*
*cause remanded.*

UTZ, P.J., DOAN and HILDEBRANDT, JJ.

————

[1] The record of the proceedings below and the appellant's brief are less than clear in presenting the range of issues the appellant has asserted. The original complaint included a claim for strict liability in tort; however, this claim was apparently withdrawn at the close of the evidence, t.p. 656, and has not been raised on appeal. Counsel for the appellant also stated before the trial court that he was withdrawing the claim for "fraud," *id.* and yet the issue of material misrepresentation appears, albeit obliquely, as part of the argument in the appellant's brief. As we cannot, on the state of this record, satisfy ourselves what effect, if any, the trial court gave to the offers of withdrawal, we shall treat the issue of material misrepresentation as still viable for the purpose of this appeal.

[2] At trial, counsel for the appellant asserted that she was suing for breach of AMSC's express warranty. T.p. 661. The appellant's brief indicates that this claim was considered part

of the appellant's general assertion of a violation of the Magnusson-Moss Warranty Act. Our review of the record fails to disclose sufficient evidence for the jury to have found that the appellees failed to fully administer the Le Car's limited warranty. Indeed, the warranty was administered well beyond its expiration. We are convinced that the appellant's essential argument with regard to the express warranty is that it failed of its essential purpose. Hence our conclusion that the evidence presented a question for the jury under *Goddard* suffices to dispose of this issue.

[3] Mr. Voorheis, AMSC's representative, testified that, in his opinion, the fact that the Behr air conditioner was installed without the necessary upgrade components resulted in the Le Car's "chronic battery discharge and heating situation." T.p. 410. Thus, the jury might, if given the opportunity, have concluded that the Behr air conditioner was the source of the car's problems. However, Mr. Voorheis's testimony does not support the inference that MAMC acted deceptively when it had the Behr air conditioner installed, or that MAMC's conviction that the Behr air conditioner was authorized was not honestly held. While R.C. 1349.02 does not require evidence of intent, we believe that it does require in a case such as this, where there is no evidence of an affirmative misrepresentation, some facts which import an element of unfair dealing. We find no such evidence on the state of this record.