OPINION
Defendant-appellant, Wysong and Miles Company ("Wysong"), appeals from a jury verdict in favor of plaintiff-appellee, Mettler-Toledo, Inc. ("Mettler-Toledo"), on appellee's claim for revocation of accepted goods (R.C. 1302.66) and damages. Mettler-Toledo cross-appeals the order of the trial court requiring Mettler-Toledo to pay the cost of shipping the revoked item back to Wysong. For the following reasons, we affirm in part and reverse in part.
The dispute between the parties involved a press brake machine manufactured by Wysong (the WYSONG PHP-100 press brake) and purchased by Mettler-Toledo in 1995. Mettler-Toledo purchased the press brake from LLY Fabricating Machine Tools, Inc. ("LLY"), an independent corporation acting as a Wysong distributor. Mettler-Toledo paid LLY a total of $102,500 for the press brake. LLY had purchased the press brake from Wysong for $85,000.
The press brake was shipped directly to Mettler-Toledo from Wysong and installed by Wysong in April 1996. Thereafter, Mettler-Toledo experienced several difficulties with the press brake, which Wysong attempted to repair pursuant to the manufacturer's warranty. By letter dated November 26, 1996, Mettler-Toledo informed Wysong that it had been "completely dissatisfied" with the performance of the press brake since its installation. In particular, Mettler-Toledo complained that the press brake failed to function properly at low tonnage levels as originally promised. Mettler-Toledo requested to return the press brake for a full refund. In February 1997, Wysong informed Mettler-Toledo that it would not accept the return of the press brake.
On May 13, 1997, Mettler-Toledo filed a complaint against Wysong and LLY, alleging claims for breach of express and implied warranties, rejection, revocation of acceptance, negligent misrepresentation and promissory estoppel. Wysong answered, denying liability, and cross-claimed against LLY for indemnification and contribution. At the jury trial, Wysong moved for directed verdict on Mettler-Toledo's revocation claim, arguing that such a claim could only be pursued against the seller of the press brake, LLY. The trial court denied Wysong's motion. The trial court, however, granted LLY's motion for directed verdict as to Mettler-Toledo's claims, ruling that the evidence showed that LLY was acting as Wysong's agent in the sale of the press brake and, therefore, was not liable to Mettler-Toledo.
Mettler-Toledo's rejection and revocation claims were submitted to the jury, and the jury returned a verdict in favor of Mettler-Toledo in the amount of $105,000, the purchase price plus consequential damages. On October 26, 1998, the trial court entered judgment in favor of Mettler-Toledo and against Wysong in the amount of $105,000 and ordered Mettler-Toledo to return the press brake, freight prepaid, to Wysong upon payment of the judgment amount.
It is from this judgment entry that Wysong appeals, raising the following seven assignments of error:
 1. The court's ruling denying Defendant Wysong's motion for directed verdict at the conclusion of Plaintiff's evidence and at the conclusion of all the evidence, on the ground that, as a matter of law, there was no privity of contract between Plaintiff Mettler-Toledo and Defendant Wysong.
 2. The court's ruling denying Defendant Wysong's motion for directed verdict at the conclusion of Plaintiff's evidence and at the conclusion of all the evidence, on the ground that the evidence was insufficient to establish privity of contract between Plaintiff Mettler-Toledo and Defendant Wysong.
 3. The court's ruling denying Defendant Wysong's motion for directed verdict at the conclusion of Plaintiff's evidence and at the conclusion of all the evidence, on the ground that, as a matter of law, Defendant LLY was not the agent of Defendant Wysong for the sale of the press brake.
 4. The court's ruling denying Defendant Wysong's motion for directed verdict at the conclusion of Plaintiff's evidence and at the conclusion of all the evidence, on the ground that the evidence was insufficient to establish that Defendant LLY was the agent of Defendant Wysong for the sale of the press brake.
 5. The court's dismissal of Defendant LLY, on the ground that the trial court did not adjudicate Defendant Wysong's crossclaims against Defendant LLY.
 6. The court's refusal to instruct the jury on setoff as requested by Defendant Wysong, on the ground that the requested instruction was a correct statement of the law applicable to the facts in the case.
 7. The court's refusal to instruct the jury on damages for breach of warranty in regard to accepted goods as requested by Defendant Wysong, on the ground that the requested instruction was a correct statement of the law applicable to the facts in the case.
Mettler-Toledo cross-appeals raising the following single assignment of error:
 1. THE TRIAL COURT ERRED WHEN IT ORDERED THE APPELLEE/CROSS-APPELLANT TO PAY THE COST OF SHIPPING THE PHP BACK TO APPELLANT.
In its first, second, third, and fourth assignments of error, Wysong challenges the trial court's decision denying Wysong's motion for directed verdict as to Mettler-Toledo's claim for revocation of acceptance. In particular, Wysong contends that a buyer may not maintain a claim against a manufacturer for revocation of acceptance absent a direct buyer-seller relationship between the parties. According to Wysong, Mettler-Toledo has no right of revocation against Wysong since Mettler-Toledo bought the press brake from LLY, an independent dealer of Wysong's machines.
The standard for determining a motion for directed verdict is similar to that used for determining a motion for summary judgment. A motion for directed verdict may be granted if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" Civ.R. 50(A)(4). Thus, the trial court does not engage in a weighing of the evidence or evaluate the credibility of the witnesses. "Rather, the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" Malone v. Courtyard By Marriott L.P.
(1996), 74 Ohio St.3d 440, 445.
R.C. 1302.66 [UCC 2-608] governs the right to revoke goods already accepted and provides as follows:
 (A) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:
 (1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
 (2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
Generally, a direct buyer-seller relationship must exist between the parties before the remedy of revocation of acceptance is applicable. Aluminum Line Products Co. v. Rolls-Royce Motors,Inc. (1994), 98 Ohio App.3d 759, 767; Funk v. MontgomeryAMC/Jeep/Renault (1990), 66 Ohio App.3d 815, 820; Noice v. Paul'sMarine Camping Center, Inc. (1982), 5 Ohio App.3d 232, 235. "The requirement of privity is based upon the unique nature of the claim which, unlike one for breach of warranty, seeks to put the plaintiff in the same position as if he had rejected the goods at the time of the initial delivery." Funk, supra. Thus, "[t]his creates a claim for relief against the seller of the goods but not against the manufacturer." Noice, supra.
However, the privity requirement does not insulate all manufacturers from a revocation claim. Rather, Ohio law recognizes that a revocation claim may be maintained against a manufacturer if the evidence shows that the dealer/seller of the product was acting as the agent of the manufacturer in the sale of the product. Funk, supra, at 820 ("unless the record also showedthat the dealer was the agent of the manufacturer in the sale ofthe automobile, the absence of privity between the manufacturer and the customer precluded an action to revoke acceptance against the manufacturer"); accord Aluminum Line, supra. An agency is established when: (1) the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted the agent to act as having such authority; and (2) the person dealing with the agent knew of the facts, and acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority. Aluminum Line, supra, at 768.
In the typical situation where the buyer purchases goods from an independent dealer or retailer, the remote manufacturer is not involved in the sales transaction and, as such, the buyer may revoke acceptance only as to the dealer and not to the remote manufacturer. See, e.g., Aluminum Line, supra (no revocation against automobile manufacturer); Funk, supra (same); Noice, supra
(no revocation against boat manufacturer); Voytovich v. BangorPunta Operations, Inc. (C.A.6, 1974), 494 F.2d 1208 (same). This is true even though the dealer acts as the agent of the manufacturer for the limited purpose of administering or extending the manufacturer's warranty. See, e.g., Aluminum Line, supra, at 768 (existence of agency with regard to warranty cannot be extrapolated to agency with regard to the sale of the vehicle);Funk, supra, at 821 (same).
Here, some of the evidence adduced at the trial evinced a sale characteristic of the typical dealer-as-seller transaction. In particular, LLY purchased the press brake from Wysong; Mettler-Toledo purchased the press brake from LLY; Mettler-Toledo paid LLY; and LLY was an independent entity from Wysong.
However, there was also evidence that, unlike the typical dealer-as-seller transaction, Wysong was actively involved in the sale of the press brake to Mettler-Toledo and that LLY was merely Wysong's agent for purposes of facilitating the transaction. Mettler-Toledo initially contacted Wysong directly regarding its interest in a press brake and was informed by Wysong that LLY was Wysong's representative in the area. An employee of LLY, after being informed by Wysong that Mettler-Toledo might be interested in a press brake, then initiated contact with Mettler-Toledo. Thereafter, representatives of both LLY and Wysong visited the Mettler-Toledo facility and, at the suggestion of a Wysong employee, Mettler-Toledo employees visited Wysong's factory in North Carolina to see the press brake in operation. The quote from LLY to Mettler-Toledo was generated from a computer disk supplied by Wysong. Mettler-Toledo also received a separate quote directly from Wysong. Finally, after its purchase, the press brake was shipped directly from Wysong to Mettler-Toledo. Wysong's representatives installed the press brake and trained Mettler-Toledo's employees on its use.
The active role of Wysong in the sales transaction is demonstrated by the testimony of Lee Yenny, the president of LLY, in which he described the process by which one sells a piece of capital equipment such as the press brake here:
 * * * The way you sell a piece of capital equipment you normally get the customer's requirements and then between the manufacturer and yourselves — meaning Wysong and yourself — you decide which would be the best avenue to take, which machine would do the best job for them. And you normally ask the customer to send material down to Wysong to try it out and you ask the customer to attend the factory to see the equipment perform. And if everything performs satisfactorily, then you go ahead proceeding with the sale. [Tr. at 169-170.]
Yenny also testified that "prior to selling any equipment we always were assisted by a regional manager from Wysong[.]" (Tr. at 156.) Testimony from Wysong's national sales manager indicated that the role of the local salesmen was to make the initial contact with the customer, but that it was the role of the factory representative (i.e., Wysong employees) to present the product and deal with the customer's particular requirements.
None of the cases cited by appellant in support of its position involved evidence of such an extensive and active participation by a manufacturer in the underlying sales transaction. While research has failed to reveal any such case in Ohio, at least one court in another jurisdiction has allowed revocation against a manufacturer in similar circumstances. SeeGaha v. Taylor-Johnson Dodge (Oregon App. 1981), 632 P.2d 483. In Gaha, the plaintiff brought a revocation of acceptance action against a motor home manufacturer, and the court of appeals affirmed denial of the manufacturer's motion for directed verdict based upon the lack of privity between the plaintiff and the manufacturer. While recognizing that the contract of sale was between the plaintiff and the dealer, the court held that their was some evidence from which the jury could find that the dealer was acting as the manufacturer's agent with respect to the transaction. In particular, the court noted that, prior to ordering the motor home, the plaintiff contacted the manufacturer directly and was given assurances that the motor home to be sold to him would be built to his specifications and delivered by a particular date. There was also evidence that the manufacturer delivered an incomplete motor home to the dealer with the expectation that the dealer would complete the modifications for delivery to the plaintiff.
Similarly, the United States District Court for the Southern District of Ohio found that under similar circumstances, a dealer acts as a mere agent or middleman for the manufacturer. See Staco Energy Products Co. v. Driver-Harris Co. (S.D. Ohio 1983), 578 F. Supp. 700. In Staco, the plaintiff purchased two metal winding machines from a dealer and then sued the dealer for damages when the machines malfunctioned. The dealer moved for summary judgment claiming that it could not be held responsible as a seller of the machines since it had acted as a mere agent or middleman on behalf of the actual seller of the machines, the manufacturer. In granting summary judgment for the dealer, the court noted that an individual's status as a seller or merely an agent of the seller is determined by examining the intent of the parties and the facts and circumstances of the actual transaction in question. Id. at 702. While noting that the plaintiff "technically" bought the machines from the dealer, the court highlighted other facts indicating the dealer's status as an agent, including: (1) that the plaintiff initially contacted the manufacturer who referred plaintiff to the dealer; (2) that the parties contemplated that the dealer would serve as a "middleman"; (3) that the dealer did not quote prices, expressly guarantee the machines, or actually possess the machines; (4) that the dealer only served as a conduit of information between the plaintiff and the manufacturer; and (5) the dealer yielded only a five percent profit, less than its regular profit on machines that it actually took possession of for sale. Id. at 701-703.
Consistent with Gaha, Staco, and the Ohio case law cited by the parties, we find that the evidence adduced at trial could support a finding that LLY acted as Wysong's agent for purposes of the sale of the press brake to Mettler-Toledo. As such, Wysong was not entitled to a directed verdict on Mettler-Toledo's claim for revocation against Wysong. Wysong's first, second, third, and fourth assignments of error are not well-taken and are overruled.[1]
In its fifth assignment of error, Wysong contends that the trial court erred in dismissing LLY from the case without adjudicating Wysong's indemnification or contribution claims against LLY. The transcript of the trial indicates that at the time the trial court dismissed LLY, the trial court was under the impression that Wysong had not filed any cross-claims against LLY. However, the record reveals that, on August 21, 1997, Wysong had filed a cross-claim seeking indemnification or contribution from LLY. As such, we find that the trial court erred in this regard. Wysong's fifth assignment of error is well-taken and is sustained.
In its sixth assignment of error, Wysong challenges the trial court's refusal to instruct the jury regarding Wysong's right of offset for Mettler-Toledo's continued use of the press brake following revocation. We disagree.
In McCullough v. Bill Swad Chrysler-Plymouth, Inc.
(1983), 5 Ohio St.3d 181, 187, fn. 4, the Ohio Supreme Court recognized that a seller may be entitled to an offset for the reasonable value of the continued use of the product after revocation. In McCullough, an offset was not warranted because the seller failed to adduce evidence of such value at trial. Here, Wysong contends that it is entitled to an offset because it elicited testimony that Mettler-Toledo continued to use the press brake after its revocation and that Mettler-Toledo recognized a financial return from its use. We do not believe, however, that such evidence is sufficient to send the issue to the jury.
Some courts have measured a seller's right to an offset by calculating the diminution in value to the product resulting from the post-revocation use. See, e.g., Schaefer v. Spampinato
(Apr. 11, 1994), Butler App. No. CA93-06-118, unreported (affirming using a cost-per-mile estimate of value based upon comparison of two similar vehicles with different mileage). Other courts have held that the rental value of the product is the appropriate measure. See, e.g., Jorgensen v. Pressnall (Oregon 1976), 545 P.2d 1382, 1386 (defendant suffered no loss due to plaintiff's post-revocation occupancy of the mobile home since trial court awarded an offset for the rental value of mobile home during such occupancy). Regardless of which approach would constitute the proper measure of Mettler-Toledo's post-revocation use in this case, Wysong failed to present evidence as to either. Wysong did not present evidence as to whether or how much Mettler-Toledo's post-revocation use of the press brake diminished its value. Nor did Wysong present evidence as to the rental value of Mettler-Toledo's use of the machine. In failing to produce such evidence, Wysong failed to create a jury issue on its right to an offset. Wysong's sixth assignment of error is not well-taken and is overruled.
In its seventh assignment of error, Wysong contends that the trial court erred in failing to instruct the jury on the proper measure of damages for the breach of warranty of accepted goods. Wysong contends that it requested an instruction that the proper measure of damages for breach of warranty of accepted goods is expectancy damages — i.e., the difference between the value of the goods as warranted and the value as received. The trial court, however, refused to give this instruction stating that through its rejection and revocation claims, Mettler-Toledo was seeking return of the purchase price plus consequential damages.
A trial court's failure to submit a requested charge to a jury constitutes reversible error only if the requested instruction was a correct statement of the law applicable to an issue raised by the evidence in the case and if the failure to so instruct was prejudicial to a substantial right of the requesting party. Hammerschmidt v. Mignogna (1996), 115 Ohio App.3d 276,280. Here, Mettler-Toledo ultimately did not seek expectancy damages under a separate breach of warranty claim. Rather, the jury was instructed to award damages only if it found that Mettler-Toledo had properly rejected or revoked the press brake. Wysong argues that the failure to give the expectancy damages instruction left the jury with an either/or decision — either find that Mettler-Toledo properly rejected or revoked the press brake (and award a full refund plus consequential damages) or find in favor of Wysong (and award no damages). According to Wysong, this approach precluded the jury from awarding a lesser amount.
We find no error in this approach. A plaintiff is allowed to elect the theory on which it desires to proceed. Here, Mettler-Toledo sought a full refund plus consequential damages or nothing at all. Ultimately, the jury found that Mettler-Toledo properly rejected or revoked. We, therefore, find that Wysong cannot show any prejudice in the trial court's failure to instruct as to the measure of damages for breach of warranty for accepted goods. Wysong's seventh assignment of error is not well-taken and is overruled.
In its sole cross-assignment of error, Mettler-Toledo contends that the trial court erred when it ordered Mettler-Toledo to pay the cost of returning the press brake to Wysong. We agree.
R.C. 1302.66(C) provides that a buyer who revokes "has the same rights and duties with regard to the goods involved as if he had rejected them." In general, a nonmerchant buyer who rightfully rejects goods has no obligation with regard to the goods except to "hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them[.]" (Emphasis added.) R.C. 1302.61(B)(2). Thus, a buyer has no legal obligation to pay for the return of a good properly rejected or revoked.
The transcript indicates that the trial court based its decision on an alleged agreement between the parties that Mettler-Toledo would pay the return shipping costs if the jury did not award consequential damages. (Tr. 753.) Mettler-Toledo disputes that such an agreement existed, and the record is silent in this regard. Moreover, even assuming that such an agreement existed, the jury did award consequential damages. As noted above, the purchase price of the press brake was $102,500. The jury, however, exceeded this amount and awarded $105,000. Thus, any alleged agreement was inapplicable given the jury's verdict.
We, therefore, find that the trial court erred in ordering Mettler-Toledo to pay the cost of returning the press brake. Mettler-Toledo's single cross-assignment of error is well-taken and is sustained.
For the foregoing reasons, Wysong's first, second, third, fourth, sixth, and seventh assignments of error are overruled; however, Wysong's fifth assignment of error and Mettler-Toledo's single cross-assignment of error are sustained. Therefore, the judgment of the Franklin County Court of Common Pleas is hereby affirmed in part, reversed in part, and this cause is remanded to that court for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part; cause remanded.
DESHLER and TYACK, JJ., concur.
[1] While an argument could be made that the agency issue should have gone to the jury rather than directing the jury to consider LLY an agent of Wysong, Wysong does not argue this point on appeal. As such, any such error in this regard has been waived, and we need not address it here.