RICHARDS, Appellant,

v.

BEECHMONT VOLVO et al., Appellees.

[Cite as *Richards v. Beechmont Volvo* (1998), 127 Ohio St.3d 188.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–961140.

Decided April 3, 1998.

*Gates T. Richards*, for appellant.

*Jeffrey C. Wade* and *Curtis L. Cornett*, for appellees.

DOAN, Judge.

Plaintiff-appellant, M. Richards, filed a complaint against defendants-appellees, Beechmont Volvo and Volvo of America, alleging that they had violated the Ohio Consumer Sales Practices Act. Appellees each filed a counterclaim against Richards for attorney fees in which they alleged that Richards's action was maintained in bad faith. Subsequently, both Richards and appellees filed motions for summary judgment.

The materials supporting and opposing the motions showed that Richards took her automobile for repairs at Beechmont Volvo in response to a recall notice by Volvo of America. Beechmont Volvo performed the recall work at no charge. It also performed regular routine service and some small repairs for which it charged Richards $52.34. Additionally, without Richards's knowledge or consent, it removed her license-plate frames and replaced them with frames advertising Beechmont Volvo.

When Richards complained, she learned that Beechmont Volvo replaced the license-plate frames on all vehicles brought in for service. Originally the

dealership told her that it could do nothing because her original frames had been destroyed. But, subsequently, it obtained license-plate frames identical to her original frames from the Dayton, Ohio dealership where Richards had bought her Volvo.

The trial court granted summary judgment in favor of appellees on all claims in Richards's complaint. It further determined that appellees were not entitled to attorney fees and dismissed their counterclaims. Finally, the trial court overruled Richards's motion for summary judgment. This appeal followed.

In her sole assignment of error, Richards states that the trial court erred in granting summary judgment in favor of appellees. She argues that the uncontradicted evidence showed that Beechmont Volvo removed her functional, intact license-plate frames without her knowledge or permission and replaced them with frames advertising the dealership. That removal, she claims, is a deceptive and unconscionable act that violates the Ohio Consumer Sales Practices Act. We find that this assignment of error is not well taken.

 The purpose of R.C. Chapter 1345, the Ohio Consumer Sales Practices Act, is to protect consumers from suppliers who commit deceptive or unconscionable sales practices. *Thomas v. Sun Furniture & Appliance Co.* (1978), 61 Ohio App.2d 78, 81, 11 O.O.3d 26, 28–29, 399 N.E.2d 567, 569. It is a remedial Act that courts must liberally construe in favor of the consumer. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933, 935; *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 334, 676 N.E.2d 151, 156–157.

 Proof that an act is deceptive within the meaning of R.C. 1345.02(A) does not require proof of intent to deceive by the supplier. *Funk v. Montgomery AMC/Jeep/Renault* (1990), 66 Ohio App.3d 815, 823, 586 N.E.2d 1113, 1119; *Thomas, supra,* at 82–83, 11 O.O.3d at 29–30, 399 N.E.2d at 569–570. The focus of any inquiry into whether an act is deceptive is the likely effect on the mind of the consumer. *Smaldino v. Larsick* (1993), 90 Ohio App.3d 691, 697, 630 N.E.2d 408, 411–412. An act is deceptive if it "has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts." *Funk, supra,* at 823, 586 N.E.2d at 1119, quoting *Brown v. Bredenbeck* (C.P.1975), 2 O.O.3d 286, 287.

In *Cranford v. Joseph Airport Toyota, Inc.* (May 17, 1996), Montgomery App. No. 15408, unreported, 1996 WL 282997, the Second District Court of Appeals further elaborated by stating that an act is deceptive if "it has the tendency or capacity to mislead consumers *concerning a fact or circumstance material to a decision to purchase the product or service offered for sale.*" (Emphasis added.) The court went on to state:

"Our holding in [a previous case] underscores a factor implicit in the Consumer Sales Practices Act and the relief it offers. In order to be deceptive, and therefore actionable, a seller's act must not only be at variance with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved. A matter that is merely incidental to the choices a consumer must make when deciding to engage in the transaction is, therefore, not 'deceptive' within the meaning of the Consumer Sales Practices Act or a basis for the relief that it offers, even though it is objectively untrue."

In that case, the plaintiffs purchased a vehicle on February 17 and returned it on the following day for repairs. At that time, the plaintiffs indicated that the monthly payment was too high and asked about new financing. The dealership arranged for a new loan and, on February 18, prepared a new sales contract. Without the plaintiffs' knowledge, it backdated the contract to February 17, the day the plaintiffs originally purchased the vehicle. Subsequently, the plaintiffs sought to rescind the sales contract apparently because the dealership had advertised the vehicle for a lower price than the plaintiffs had paid for it. They brought an action for violations of the Consumer Sales Practices Act, claiming that the dealer had committed several deceptive acts, including backdating the contract. The court found that although the backdating of the contract was arguably deceptive, it was not actionable under the Consumer Sales Practices Act because it did not have a material effect on the plaintiffs' decision to purchase the vehicle:

"It is apparent that the [plaintiffs] wish to be no longer bound by their contract, but that desire, standing alone, does not cause the act of the seller in backdating the contract to be a 'deceptive act' for the purposes of R.C. 1345.02. The one-day difference is merely incidental to the transaction and was immaterial to the [plaintiffs'] decision to enter into it. The act has not been shown to have the tendency or capacity to deceive, and so it was not a 'deceptive' act or practice for purposes of R.C. 1345.02(A)."

██ We find the *Cranford* court's logic to be applicable to the present case. Here, the consumer transaction was the warranty repair and other services performed on Richards's vehicle by Beechmont Volvo. See R.C. 1345.01(A); *Brown v. Liberty Clubs, Inc.* (1989), 45 Ohio St.3d 191, 193–194, 543 N.E.2d 783, 785–786. Richards has made no complaint of any kind about these services; she takes issue only with the replacement of her license-plate frames, which was completely incidental. Although the replacement of the frames could arguably constitute a conversion, that act is not inextricably intertwined with the consumer transaction itself and does not have the capacity or tendency to deceive. See *Liberty Clubs, supra,* at 194–195, 543 N.E.2d at 786; *Saydell v. Geppetto's Pizza*

*& Ribs Franchise Systems, Inc.* (1994), 100 Ohio App.3d 111, 125, 652 N.E.2d 218, 227. We do not believe that this type of a minor, incidental situation is what the Consumer Sales Practices Act was designed to remedy, particularly given that the dealership made a good-faith effort to remedy Richards's complaint by tendering an identical set of frames. See *Palmer v. George Ballas Buick, Inc.* (Nov. 23, 1984), Lucas App. No. L–84–060, unreported, 1984 WL 14430. Compare *State ex rel. Celebrezze v. Ferraro* (1989), 63 Ohio App.3d 168, 578 N.E.2d 492; *Brown v. Lyons* (C.P.1974), 43 Ohio Misc. 14, 72 O.O.2d 216, 332 N.E.2d 380. Consequently, we hold that the replacement of the license-plate frames was not a deceptive act as contemplated by the Act. See, generally, Roberts & Martz, Consumerism Comes of Age: Treble Damages and Attorney Fees and Consumer Transactions—The Ohio Consumer Sales Practices Act (1981), 42 Ohio St.L.J. 927.

We find no issues of material fact. Construing the evidence most strongly in Richards's favor, we hold that reasonable minds can reach but one conclusion: that appellees did not commit a deceptive act within the meaning of R.C. Chapter 1345. Appellees were entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in their favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Accordingly, we overrule Richards's assignment of error and affirm the judgment of the trial court.

We also note that appellees argue in their brief that Richards's appeal is frivolous and therefore that we should award them the attorney fees they have incurred in this appeal pursuant to App.R. 23. They have not, however, filed a motion for fees pursuant to App.R. 15 or Loc.R. 13. A paragraph in a responsive brief is insufficient to raise the issue before this court, and we therefore decline to consider it. *Hollon v. Abner* (Aug. 29, 1997), Hamilton App. No. C–960182, unreported, fn. 2, 1997 WL 602968.

*Judgment affirmed.*

SHANNON, J., concurs.

PAINTER, P.J., dissents.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

PAINTER, Presiding Judge, dissenting.

Without the consumer's permission, a dealership where she had taken her car for routine service removed and destroyed her license-plate frames and by stealth

substituted its own advertisement. If the Consumer Sales Practices Act does not protect against such an outrage, it is faulty indeed. But it does, in spite of the cursory shrift given it by the majority.

The majority cites the logic in *Cranford v. Joseph Airport Toyota, Inc.*, a case in no way similar to the case here, as authority that "a seller's act must not only be at variance with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved." *Cranford v. Joseph Airport Toyota, Inc.* (May 17, 1996), Montgomery App. No. 15408, unreported, 1996 WL 282997. Using this backdrop, the majority assumes that the dealer's act of exchanging Richards's license-plate frames for Beechmont Volvo license-plate frames—converting Richards's vehicle to a moving advertisement for the Beechmont dealership—could not be material to her decision to purchase the routine services and repairs offered by the dealership. But had Richards known that her license-plate frames would be exchanged for those bearing the Beechmont dealership's name, she may have chosen to obtain the services elsewhere—such services are readily obtainable. Considering that the exchanged license-plate frames have moved Richards to bring this lawsuit, I cannot imagine that this exchange would not have been a factor in her decision whether to have the dealership perform her automobile's servicing.

More importantly, the majority refuses to analyze the facts of this case under the Consumer Sales Practices Act itself. The majority correctly cites *Einhorn v. Ford Motor Co.* for the proposition that the CSPA must be liberally construed, but then proceeds to interpret the remedial legislation illiberally and narrowly. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933.

While I do agree with the majority that the dealership arguably committed a conversion, I do not see how this necessarily precludes the application of the CSPA. The CSPA explicitly prohibits unfair or deceptive sales practices in connection with a consumer transaction. See R.C. 1345.02. A liberal construction of the CSPA is not even necessary to fit Beechmont Volvo's sales practices under its terms.

Richards asserts that the dealership violated three provisions of Ohio Adm. Code 109:4-3-13 and thus violated the CSPA. Beechmont Volvo responds by contending that the CSPA is not implicated because the cost of the license-plate frames was less than $25, and because this court has stated that Ohio Adm.Code 109:4-3-13 is applicable only when the cost of a consumer transaction is more than $25. See *Funk v. Montgomery AMC/Jeep/Renault* (1990), 66 Ohio App.3d 815, 586 N.E.2d 1113. But the cost of the consumer transaction at issue—the routine service and minor repairs—was estimated at $60, and Richards actually paid $52.34.

Taken one step further, Beechmont Volvo's argument is that the exchange of the frames was merely incidental to the routine service and repairs, and thus not a part of the consumer transaction—and not within the reach of the CSPA. But Beechmont Volvo admitted that it regularly exchanged license-plate frames as a part of every service or repair. Thus, it was in fact a "service" that Beechmont Volvo provided as a part of every repair or servicing. The license-plate-frame exchange was a component of *all* service and repair work that Beechmont Volvo performed, just as a complimentary tire rotation might be a component of an alignment. If, during such a tire rotation, the dealership replaced a customer's hubcaps with different hubcaps, I can only assume that the majority would agree that a violation of the CSPA occurred. Seemingly, the only difference between this hypothetical and the facts in this case is the cost of hubcaps versus the cost of license-plate frames. Beechmont Volvo's argument that exchanging the license-plate frames was severable from the routine service and repairs is feckless—Beechmont *itself* made it part of all routine service.

Additionally, I would agree with the Ross County Court of Appeals that the *Funk* decision wrongly applied the $25 limit to sections of Ohio Adm.Code 109:4–3–13 other than section (A). See *Vannoy v. Capital Lincoln–Mercury Sales, Inc.* (1993), 88 Ohio App.3d 138, 623 N.E.2d 177. Only section (A) has the dollar restriction (when there is face-to-face contact between dealer and customer). Section (C) of the regulation does not have a dollar restriction, is specifically applicable "in any consumer transaction involving the performance of any repair or service upon a motor vehicle," and lists sixteen deceptive acts or practices.

One of these listed deceptive acts, embodied in subsection (C)(12), is the failure to provide an itemized list of repairs performed or services rendered, including a list of parts or material. Beechmont Volvo did not list the "service" of exchanging the license-plate frames. And, in subsection (C)(13), "failing to tender any replaced parts, unless the parts are to be rebuilt or sold by the supplier, or returned to the manufacturer in connection with warranted repairs or services, and such intended reuse or return is made known to the consumer prior to commencing any repair or service," is a deceptive act. Beechmont Volvo did not tender the replaced license-plate frames at the time they were exchanged.

I would hold that Beechmont Volvo violated these two provisions of the Ohio Administrative Code and thus violated the CSPA. Such a resolution would not prohibit dealerships from placing license-plate frames bearing their names on their customers' cars—they would just have to obtain permission first. This court's decision to the contrary today is an outrage to the law and to common sense.