SAVE THE LAKE, Appellant,

v.

CITY OF HILLSBORO, Appellee.

[Cite as *Save the Lake v. Hillsboro*, 158 Ohio App.3d 318, 2004-Ohio-4522.]

Court of Appeals of Ohio,
Fourth District, Highland County.

No. 04CA6.

Decided Aug. 23, 2004.

J. Dwight Poffenberger Jr., for appellant.

Fred J. Beery, for appellee.

Harsha, Judge.

{¶ 1} Save the Lake, an Ohio nonprofit organization, appeals the trial court's decision dismissing its complaint for lack of standing. It argues that under Civ.R. 71, it has standing to seek enforcement of a 1988 consent order entered into between the Ohio Attorney General and the city of Hillsboro. Because appellant is an incidental beneficiary rather than a person for whose benefit the consent order was entered, it does not have Civ.R. 71 standing. Therefore, we affirm the court's judgment.

{¶ 2} In 1988, the Ohio Attorney General filed a complaint for injunctive relief and civil penalties against the city of Hillsboro for violating an Ohio EPA order, which R.C. 6111.07 prohibits. The Attorney General alleged that the city had violated the Ohio EPA order "by discharging sewage, industrial waste and other waste into Clear Creek in excess of the levels authorized by the interim table set forth in the [order]." The complaint also alleged that the city had violated R.C. 6111.04, which prohibits a permit holder from discharging any waste in an amount exceeding that authorized by the permit. The Attorney General sought an injunction ordering the city to comply with R.C. Chapter 6111 and to pay civil penalties as authorized by statute.

{¶ 3} The city and the Attorney General subsequently entered into a consent decree. It stated that it would "apply and be binding upon the parties to this action, their agents, officers, employees, assigns, successors in interest and any person acting in concert or privity with any of them." The decree enjoined and ordered the city "to immediately comply with the requirements of Chapter 6111 of the Ohio Revised Code and the terms and conditions of the rules and regulations adopted under that Chapter and its currently effective NPDES Permit except for the effluent limitations set forth in said permit." The order further enjoined the city "to properly operate and maintain its wastewater treatment plant and any associated equipment and structure."

{¶ 4} In November 2003, Save the Lake filed a complaint to enforce the consent order. Save the Lake has members throughout the United States, including Ohio. Part of its mission is to preserve and to enhance the natural resources and environment in the state of Ohio and to ensure that state and federal officials comply with and fully uphold state and federal laws designed to protect waters. In its complaint, it alleged that its members are being adversely affected by the city's failure to comply with the consent decree.

{¶ 5} Appellee subsequently filed a motion to dismiss. It argued that (1) appellant lacked standing, (2) the trial court did not have subject-matter jurisdiction, (3) appellant failed to join necessary parties, and (4) appellant's complaint

failed to state a claim. Appellant countered, among other things, that under Civ.R. 71, it has standing to sue to enforce the consent decree.

{¶ 6} The court granted appellee's motion to dismiss, concluding that Civ.R. 71 did not give appellant standing to enforce the consent decree.

{¶ 7} Appellant timely appealed the trial court's judgment and assigns the following errors:

### First Assignment of Error

The trial court erred in granting defendant's motion to dismiss based on plaintiff's lack of standing.

### Second Assignment of Error

The trial court erred in finding that plaintiff had failed to join all necessary parties.

{¶ 8} In its first assignment of error, appellant asserts that Civ.R. 71 governs the outcome of this appeal and provides it with standing to enforce the consent decree. The standing doctrine "encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove Unified School Dist. v. Newdow* (2004), —— U.S. ——, ——, 124 S.Ct. 2301, 2309, 159 L.Ed.2d 98, quoting *Allen v. Wright* (1984), 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556. "'Without such limitations * * * the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.'" Id., quoting *Warth v. Seldin* (1975), 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343. "The requirement of standing is not designed to shield agencies and officials from accountability to taxpayers; instead, it denies the use of the courts to those who, while not sustaining a legal injury, nevertheless seek to air their grievances concerning the conduct of government. The doctrine of standing directs those persons to other forums." *Racing Guild of Ohio, Local 304, Serv. Emp. Internatl. Union, AFL–CIO, CLC v. Ohio State Racing Comm.* (1986), 28 Ohio St.3d 317, 321, 28 OBR 386, 503 N.E.2d 1025.

{¶ 9} Whether a party has standing under Civ.R. 71 is a question of law that courts review on a de novo basis. See *Hook v. Arizona* (C.A.9, 1992), 972 F.2d 1012. Civ.R. 71 provides: "When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same

process as if he were a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, he is liable to the same process for enforcing obedience to the order as if he were a party."

{¶ 10} Little case law exists regarding "[w]hen an order is made in favor of a person who is not a party to the action." The Staff Notes to the rules provide some help in interpreting the rule. Those notes state: "Rule 71 is the same as Federal Rule 71. The rule is merely an enabling rule which allows orders in favor of and against persons not parties. It is intended to eliminate the necessity of making persons technical parties to suits in order to reach a just and proper result. No substantive rights are enlarged. The rule is intended to operate only in cases where the person not a party is entitled to an order or where there may be enforcement of an order against a person not a party. There are many situations where these rules will affect the rights of persons and be applicable to persons who are not parties to the action. Some of the more common examples include members of a class under Rule 23, shareholders under Rule 23.1, persons affected by protective orders under Rule 26(C) and Rule 30(D), persons subject to subpoena under Rule 45, and persons bound by injunctions under Rule 65."

{¶ 11} One author has explained: "When appropriate, the first clause of Rule 71 provides that nonparties may enforce orders made in their favor in the same manner as do parties. * * * To enforce orders in their favor, however, nonparties should have standing to maintain such an action. * * * Nonparties should be permitted to invoke Rule 71 only when an order has been entered in their favor. Thus, persons not signatories to a settlement agreement should have no basis for seeking its enforcement." Fink et al., Guide to the Ohio Rules of Civil Procedure (2004), Section 71:1, at 71–1.

{¶ 12} In this case, appellant seeks to enforce a consent decree to which it was not a party, claiming that the consent decree was entered in its favor. "A consent decree, although in effect a final judgment, is a contract founded on the agreement of the parties. * * * It should be construed to preserve the position for which the parties bargained. A consent decree 'is not enforceable directly or in collateral proceedings by those who are not parties to it * * *.' *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S.Ct. 1917, 44 L.Ed.2d 539." *Vogel v. Cincinnati* (C.A.6, 1992), 959 F.2d 594, 598; see, also, *Fed. Trade Comm. v. Owens–Corning Fiberglas Corp.* (C.A.6, 1988), 853 F.2d 458, 464, citing *Dahl, Inc. v. Roy Cooper Co.* (C.A.9, 1971), 448 F.2d 17, 20 ("Only the Government can seek enforcement of its consent decrees"); *United States v. Am. Soc. of Composers, Authors & Publishers* (C.A.2, 1965), 341 F.2d 1003, 1008 ("the government is the sole proper party to seek enforcement of government antitrust decrees"). Thus, a consent decree " 'may be challenged only on the ground that its substantive provisions unlawfully infringe upon the rights of the complainant.' "

*Vogel v. Cincinnati,* 959 F.2d at 598, quoting *Vanguards of Cleveland v. Cleveland* (C.A.6, 1985), 753 F.2d 479, 484.

{¶ 13} In *Hook v. Arizona,* 972 F.2d 1012, the court considered whether Fed.R.Civ.P. 71, which is the federal analog to the Ohio rule, provided current inmates with standing to enforce a consent decree that the Arizona Department of Corrections had entered into in 1973 with inmates residing in the prison at that time. The court held that the plaintiffs were intended third-party beneficiaries of the prior consent decree and, thus, were entitled to seek its enforcement under Fed.R.Civ.P. 71.

{¶ 14} In reaching its decision, the court provided this analysis: "[C]onsent decrees are essentially contractual agreements that are given the status of a judicial decree. Contract principles are generally applicable in our analysis of consent decrees, provided contract analysis does not undermine the judicial character of the decree. * * * [C]onsent decrees are construed as contracts for purposes of enforcement. * * * [E]nforcement of consent decrees is governed by the established contract principle that non-parties, as intended third-party beneficiaries, may enforce an agreement. See Restatement (Second) of Contracts [Section] 304 [and comment] a-b (1981) (parties to an agreement have the power to create enforcement rights in non-parties). This principle is consistent with the Federal Rules of Civil Procedure: 'When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party * * *' Fed.R.Civ.P. 71; see, *Berger v. Heckler,* 771 F.2d 1556, 1565–66 (2 Cir.1985); *Lavapies v. Bowen,* 687 F.Supp. 1193, 1207 (S.D.Ohio 1988) ('Under Rule 71, a non-party who establishes standing to proceed as a third-party beneficiary of a settlement agreement or consent decree may pursue enforcement of that agreement or decree.') (citations omitted). In short, intended third party beneficiaries of a consent decree have standing to enforce the decree." Id. at 1014.

{¶ 15} The *Hook* court acknowledged the United States Supreme Court's statement that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it," *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. at 750, 95 S.Ct. 1917, 44 L.Ed.2d 539, but determined that this statement did not apply to intended third-party beneficiaries. The court noted: "In contract law, third party beneficiaries of the government's rights under a contract are normally assumed to be only incidental beneficiaries and are precluded from enforcing the contract absent a clear expression of a different intent. See Restatement (Second) of Contracts [Section] 313(2), [comment] 1 (1981) ('Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested')." The court

concluded that the current inmates were intended third-party beneficiaries of the prior consent decree and, thus, entitled to seek its enforcement under Fed. R.Civ.P. 71. After reviewing the consent decree, the court concluded that its language indicated an express intent to confer a benefit on all inmates, not just the 11 inmates named in the complaint. The decree itself included "inmates" and "residents" as recipients of the relief that it afforded. This express inclusiveness manifested an intent to benefit future inmates.

{¶ 16} We assume arguendo that the *Hook* court's distinction between incidental "public at large" beneficiaries and intended beneficiaries is applicable here. However, we cannot find an express manifestation of the intent to create intended third-party beneficiaries in the language of the agreement between the EPA and the city. The only language in the decree that could even arguably be construed to confer an intended benefit on third parties appears in paragraph II, entitled "PARTIES." This section reads in its entirety: "The provisions of this Consent Order shall apply and be binding upon the parties to this action, their agents, officers, employees, assigns, successors in interest and any person acting in concert or privity with any of them. Defendant Hillsboro shall provide a copy of this Consent Order to each contractor it employs to perform work itemized herein, and each general contractor shall provide a copy of this Consent Order to each of its subcontractors for such work." We see nothing in this language that would allow us to conclude that the parties manifested an intent to create enforcement rights in the public at large or civic-minded associations.

{¶ 17} Furthermore, appellant possesses no substantive right under the consent decree. The consent decree arose out of the city's violations of provisions in R.C. Chapter 6111. The statutory scheme in R.C. Chapter 6111 does not create a private right of action, but instead charges the state government with enforcing its provisions. The Ohio Supreme Court has held that where an agency is charged with enforcement of certain laws, these laws do not confer upon an individual the right to bring a private civil action absent a "clear implication" that such a remedy was intended by the legislature. *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 248–249, 75 O.O.2d 291, 348 N.E.2d 144. "It is a basic doctrine of statutory construction that when the legislature has authorized an action to be instituted by a particular person or office, the suit may not be instituted by another." *Nielsen v. Ford Motor Co.* (1996), 113 Ohio App.3d 495, 500, 681 N.E.2d 470; see *Beatley v. Schwartz,* Franklin App. No. 03AP–911, 2004-Ohio-2945, 2004 WL 1244360; *Uland v. S.E. Johnson Cos.* (Mar. 13, 1998), Williams App. No. WM–97–005, 1998 WL 123086 (stating that any claim based on R.C. Chapter 6111 regarding "waters of the state" is inapplicable because no private right of action exists under that chapter); see, also, *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 ("Where,

however, Congress has authorized public officials to perform certain functions according to law * * * the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff"). Cf. *Williams v. Avon* (1977), 52 Ohio App.2d 210, 6 O.O.3d 204, 369 N.E.2d 486 (upholding trial court's decision denying intervention to a citizens' group in an action to compel the city of Avon to comply with water pollution abatement orders under R.C. Chapter 6111 because the group did not have a sufficient interest in the action and was "adequately represented by existing parties"). While appellant's goals are clearly laudable, it cannot establish Civ.R. 71 standing so as to maintain this action and must explore other ways to air its grievances.

{¶ 18} Consequently, we overrule appellant's first assignment of error. Appellant's second assignment of error is moot, and we will not address it. See App.R. 12(A)(1)(c).

Judgment affirmed.

KLINE, P.J., and PETER B. ABELE, J., concur.