[Cite as *Hathorn v. Dana Motor*, 2016-Ohio-5110.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROBIN HATHORN, | : | APPEAL NO. C-150363 |
| | | TRIAL NO. A-1200426 |
| and | : | |
| WILLIAM BLOUNT, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| DANA MOTOR CO., LLC., | : | |
| and | : | |
| HCHT, LLC., | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 27, 2016

*Freaking & Betz, LLC, Randolph Freaking* and *Brian P. Gillan*, and *Jacobs, Kleinman, Seibel & McNally Co, L.P.A.,* and *Mark J. Byrne*, for Plaintiffs-Appellants,

*Keating, Meuthing & Klekamp, James R. Matthews, Joseph M. Callow* and *William N. Minor*, for Defendants-Appellees.

**STAUTBERG, Judge.**

{¶1}   Plaintiffs-appellants Robin Hathorn and William Blount filed a class-action lawsuit against defendants-appellees Dana Motor Co., LLC, and HCHT, LLC., (collectively "Dana Motor") alleging violations of the Ohio Consumer Sales Practices Act ("CSPA"), fraud, and breach of contract.  They also asserted a claim entitled "breach of the duty of good faith and fair dealing."[1] Hathorn and Blount's claims stemmed from allegations that Dana Motor repeatedly overcharged them, and a putative class of thousands of individuals, for motor oil, transmission fluid, coolant, power-steering fluid, differential fluid, washer fluid, transfer-case fluid, and brake fluid.  Hathorn and Blount further alleged that Dana Motor repeatedly charged them and putative class members for "DriveSure Krex," and/or a "BG Flush Kit" even though these products were not used in their respective automobiles.

{¶2}   The parties filed cross-motions for summary judgment.  Hathorn and Blount moved the trial court for summary judgment only as those claims pertained to Dana Motor's allegedly unlawful sale of motor oil.  Dana Motor moved for summary judgment on all of Hathorn and Blount's claims.  The trial court granted Dana Motor's motion.  We note that, on appeal, Hathorn and Blount challenge the trial court's judgment only as it pertains to motor oil sales, in particular.  We therefore limit our analysis accordingly.

### Facts

{¶3}   Dana Motor is in the business of selling and servicing Mercedes Benz automobiles.  Hathorn and Blount, Mercedes Benz owners, were service customers at Dana Motor.  In support of their respective motions for summary judgment, the

---

[1] Hathorn and Blount withdrew this claim during briefing of the motion for summary judgment and we will not address it here.

parties submitted to the court copies of Dana Motor invoices. On those invoices relating to motor oil sales, Hathorn contended that the invoices showed that she had been charged for eight units (presumably quarts) of motor oil. Hathorn claimed that her car only held seven and one-half quarts of motor oil. When Hathorn had an oil change, however, it was part of a specific service package in which other services—e.g. tire rotation and vehicle inspections—were provided.

{¶4} The invoices charging Blount for motor oil showed that Dana Motor had allegedly charged Blount for nine units of motor oil. Blount claimed that his car held only eight and one-half quarts of motor oil. As with Hathorn, Blount's oil changes were a component of a service package in which other services were provided.

{¶5} In support of their motion for summary judgment, Dana Motor argued, in part, that the number of quarts of motor oil listed on Hathorn's and Blount's invoices was irrelevant because Hathorn and Blount had each paid a preset "menu price" for a bundled service package that included a motor oil change. According to an affidavit of Matthew Fairbanks, who had personally updated Dana Motor's "menu pricing system," for every service interval and each make and model of Mercedes Benz automobile, he combined the necessary parts, fluids, and labor to create one total service-package price to be offered to the customer. Fairbanks stated that, under this pricing system, "the customer pays one total price for the service package and all that it encompasses, instead of being charged for individual items and labor."

{¶6} Other evidence submitted to the court established that Dana Motor's billing software allowed and utilized whole units of fluids, only, and the billing software would not allow fractional numbers to be entered into the system.

{¶7} After briefing and arguments by the parties, the trial court entered summary judgment in favor of Dana Motor on all claims. In pertinent part, the trial

court determined that (1) Hathorn and Blount's CSPA claims failed because there was nothing deceptive or unconscionable about Dana Motor's billing practices, and (2) Hathorn and Blount's breach of contract claims were barred by the "Voluntary Payment Doctrine."

{¶8}   In their sole assignment of error, Hathorn and Blount now argue that the trial court erred in entering summary judgment in favor of Dana Motor.  We review the granting of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion and that conclusion is adverse to the nonmoving party.  Civ.R. 56(C); *Grafton*; *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

## Fairbanks's Affidavit

{¶9}   As an initial matter, we address an argument raised by Hathorn and Blount that the trial court should have disregarded Fairbanks's affidavit.  Hathorn and Blount contend that, because Dana Motor did not identify Fairbanks as a witness in discovery, they never had an opportunity to depose him and were "sandbagged."

{¶10}  Hathorn and Blount cite no authority in support of this argument.  The record does not reflect, nor do Hathorn and Blount argue, that any deadline for naming witnesses had passed.  Further, they could have, but did not, move the trial court under Civ.R. 56(F) for more time to conduct discovery before responding to Dana Motor's motion.

{¶11}  Upon a review of the record, we can find no grounds for the trial court to have disregarded Fairbanks's affidavit.  This argument has no merit.

4

**The Ohio Consumer Sales Practices Act**

{¶12} Hathorn and Blount next contend that the trial court should not have entered summary judgment on their CSPA claims. The CSPA "prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990); *see* R.C. 1345.02 and 1345.03. Hathorn and Blount claim that there remain genuine issues of material fact concerning whether Dana Motor's sale of motor oil was both deceptive and unconscionable.

{¶13} An act is deceptive if it " 'has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts.' " *Funk v. Montgomery AMC/Jeep/Renault*, 66 Ohio App.3d 815, 823, 586 N.E.2d 1113 (1st Dist.1990), citing *Brown v. Bredenbeck*, Franklin C.P. No. 74CV-09-3493, 1975 Ohio Misc. LEXIS 124, *5 (July 24, 1975). R.C. 1345.02(B) contains a nonexhaustive list of acts that are considered "deceptive." Hathorn and Blount argue that Dana Motor acted deceptively under R.C. 1345.02(B)(6) because Dana Motor induced them to believe that they were receiving more motor oil than they actually were. *See* R.C. 1345.02(B)(6). Hathorn and Blount also claim that, by overbilling them for motor oil, Dana Motor acted deceptively by representing that a "specific price advantage" existed that did not. *See* R.C. 1345.02(B)(8).

{¶14} In support of these claims, Hathorn and Blount contend that Dana Motor's itemized billing led them to believe that they had received more motor oil than they actually did because their invoices listed a greater amount of motor oil than their respective cars could hold. The trial court determined, and we agree, that Hathorn and Blount's argument is flawed in that it ignores that "they purchased a service at a fixed price" and did not purchase "the individual components comprising the service."

{¶15} According to Fairbanks, who was responsible for updating Dana Motor's menu pricing system, he combined the necessary parts, labor, and fluid for a given service package—such as a 5,000-mile service check—to ultimately come up with one total price for the service package. Fairbanks stated:

> When a customer brings a car to the dealership for service, the Service Advisor opens the menu pricing system on the ADP [billing] software and first enters the chassis number of the vehicle. * * * The Service Advisor must then select a service. The list of model variants will then appear, and after the model variant is selected, a detailed list of parts, products and anticipated labor hours will appear for the service. In addition to the detailed list of parts, products and labor hours, a total price will be generated for the customer.

> This menu pricing system enables the Service Advisor to give the customer the "out the door" price, as it will not change between the time the quote is given and when the service is actually performed. In other words, if the cost of a particular part goes up, Dana Motors' [sic] margins will go down because the price of the part is already accounted for in the menu pricing system.

{¶16} Hathorn and Blount never alleged or claimed that they purchased individual quarts of motor oil, a la carte, from Dana Motor. Their invoices all indicated that they purchased service packages specific to mileage intervals. According to Fairbanks's affidavit, these service packages were menu-priced. Under menu pricing, the customer was offered a fixed price for a bundle of services that included all labor, parts, and fluids. There is no evidence that Hathorn and Blount were led to believe

6

that they were purchasing individual quarts of motor oil instead of a service package that included an oil change and all that it entailed.

{¶17} Hathorn and Blount claim that Dana Motor's own witnesses contradicted Fairbanks's statements. We fail to see how. While it is true that multiple witnesses testified in their depositions that Dana Motor's billing software billed in whole units, none of these witnesses testified about how this interacted with menu pricing or service packages. According to Fairbanks, the menu price did not change from the start of service to the end—the price was therefore not based on the amount of fluids actually used. The customers agreed to pay the quoted price for the agreed upon services. There is nothing in the record to contradict this. Further, deposition testimony from other witnesses corroborated Fairbanks's testimony that Dana Motor offered menu pricing to its customers. One witness, former Dana Motor service advisor Larry Molloy, confirmed that all oil changes were menu-priced. Molloy admitted that he did not know how the menu pricing system worked. Another witness, Dana Motor's parts manager, Rick Crain, testified that service customers were shown a "service menu" when they came in, and that the menu detailed recommended maintenance packages. Hathorn and Blount's own witness, Dana Motor parts advisor Wesley Nichols, confirmed that Dana Motor used a menu pricing system.

{¶18} Based on this evidence, we hold that the trial court correctly concluded that there was no genuine issue of fact concerning whether Dana Motor acted in a deceptive manner. Hathorn and Blount got what they paid for—a service package that included a motor oil change for a fixed price. *Compare Kelly v. Ford Motor Co.*, 137 Ohio App.3d 12, 738 N.E.2d 9 (1st Dist.2000) (the failure to itemize certain fees in an automobile lease was not deceptive or unfair under the CSPA because appellants were not misled as to the total cost of the lease).

**{¶19}** Nor do we find an issue of fact regarding whether Dana Motor's billing practices were unconscionable. " 'Unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24. To determine whether an act is unconscionable, R.C. 1345.03 sets forth a number of circumstances that a court should consider.

**{¶20}** In this case, Hathorn and Blount claim that Dana Motor acted unconscionably because they knowingly took unfair advantage of them by overcharging for motor oil. R.C. 1345.03 sets forth a number of "circumstances" that a trial court should consider in determining whether an act is unconscionable. Presumably, Hathorn and Blount rely on R.C. 1345.03(B)(1). That code section provides that a court should consider whether a supplier has "knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's * * * inability to understand the language of an agreement." R.C. 1345.03(B)(1). There is nothing in the record to show that Dana Motor engaged in this type of behavior. Hathorn and Blount make no other allegations specifically pertaining to Dana Motor acting "unconscionably." And we find no other circumstances listed in R.C. 1345.03 to exist. This argument therefore has no merit.

### Fraud

**{¶21}** Hathorn and Blount next contend that the trial court erred when it entered summary judgment in favor of Dana Motor on their fraud claim. The elements of fraud are (1) a representation, or concealment where there is a duty to disclose, (2) that is material to the transaction, (3) made falsely, with knowledge or reckless disregard of its falsity, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation or concealment, and (6) damages

proximately caused by the reliance. *Rose v. Zaring Homes*, 122 Ohio App.3d 739, 744, 702 N.E.2d 952 (1st Dist.1997), citing *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

{¶22} The crux of Hathorn and Blount's fraud claim was that Dana Motor had represented to Hathorn and Blount that they were providing more motor oil to them than they were. There was deposition testimony from Hathorn, Blount, and Larry Molloy that Dana Motor's itemized bills showed that Hathorn and Blount were charged for motor oil that they never received. But there was no testimony or other evidence that Hathorn or Blount purchased individual quarts of motor oil, as opposed to a motor oil change. And it was uncontested that a motor oil change was menu-priced. Based on Fairbanks's affidavit, the actual amount of fluids used was irrelevant to what a customer paid because under the menu pricing scheme the quoted price did not change from start to finish. Instead, customers received bundled services and goods for a fixed price. We find nothing fraudulent about this practice.

{¶23} For similar reasons, Hathorn and Blount's breach of contract claim fails. A breach of contract exists where, without legal justification, a party fails to perform any promise that forms a whole or part of a contract. *Natl. City Bank of Cleveland v. Erskine & Sons*, 158 Ohio St. 450, 110 N.E.2d 598 (1953), paragraph one of the syllabus. Hathorn and Blount claim that Dana Motor breached their contract with them by failing to provide the motor oil that Hathorn and Blount had paid for.

{¶24} Hathorn and Blount paid for bundled services and goods. They do not allege, and there is no evidence to show, that Dana Motor failed to provide the agreed upon bundle of services and goods at the agreed upon price.

{¶25} Hathorn and Blount also argue that the trial court improperly relied on the "Voluntary Payment Doctrine" when ruling on their breach of contract claim.

Because we have already determined that there was no breach of contract, this argument is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

{¶26} This argument therefore has no merit.

## Conclusion

{¶27} The bottom line in this case is that Hathorn and Blount each received what they paid for—agreed upon automobile services at agreed upon prices. Summary judgment in favor of Dana Motor was appropriate, and Hathorn and Blount's sole assignment of error is overruled.

{¶28} The trial court's judgment is affirmed.

Judgment affirmed.

**DEWINE, P.J.,** and **MOCK, J.,** concur.

Please note:

    The court has recorded its own entry this date.