[Cite as *Frank v. WNB Group, L.L.C.*, 2019-Ohio-1687.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BRIAN FRANK, | : | APPEAL NO. C-180032 |
| | | TRIAL NO. A-1406530 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| WNB GROUP, LLC, d.b.a THE RAY HAMILTON MOVING COMPANY, | : | |
| | : | |
| Defendant-Appellee. | | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 3, 2019

*The Durst Law Firm* and *Alexander J. Durst*, for Plaintiff-Appellant,

*Finney Law Firm, LLC*, and *Stephen E. Imm*, for Defendant-Appellee.

**WINKLER, Judge**.

{¶1} Plaintiff-appellant Brian Frank challenges the trial court's entry of summary judgment for defendant-appellee WNB Group LLC, d.b.a. The Ray Hamilton Moving Company ("RH"), on Frank's Ohio Consumer Sales Practices Act ("CSPA") claim. For the following reasons, we reverse.

## I. Relevant Background Facts and Procedure

{¶2} According to Frank's deposition testimony and affidavit,[1] he purchased a large ceramic fountain from an antique store. The store would not deliver the item, and upon Frank's request, the store's owner recommended that Frank hire RH to transport and install it at Frank's hillside residence. Before hiring RH, Frank had a telephone conversation with the moving company's owner, Jay Wallace. Wallace and Frank orally agreed on a rate of about $2000, but did not discuss RH's insurance coverage for damage incurred to the fountain during the move.

{¶3} Wallace assured Frank that he would send Randy Jackson, an experience employee, to perform the move. RH's website, which Frank had viewed, indicated that RH had "customized white-glove handling solutions for fine art," but stated nothing about insurance coverage. Less than a year prior, when Frank had hired RH for his employer, an employee of RH had informed him that the company had "full coverage" insurance.

{¶4} In November 2012, RH employees including Jackson successfully transported the fountain from the antique store to Frank's residence, but the crate

---

[1] The record contains several notices indicating that Frank would file the transcribed depositions of others, but only one other deposition, related to the issue of damages, was filed. Further, while the transcript of Frank's deposition was filed, the exhibits referred to in the deposition were not filed.

containing the fountain fell to the ground during the unloading process, damaging the fountain.

{¶5} After installing the damaged fountain, Jackson apologized to Frank and told him that RH would pay for the repairs. At the same time, Jackson directed Frank to call the office to find out how much was owed for the service and gave him a document acknowledging the completion of the move, on which Jackson had written, "Fountain was dropped on its face by [Defendant,] * * * damage to be accessed for repair." That form also contained information about the deductible and limit of RH's insurance policy.

{¶6} When Frank contacted RH the next day to pay for the service, he was assured that RH had insurance that would pay for the repairs. Frank paid for the service, believing that RH would pay to repair the fountain and that it had insurance coverage for those repairs.

{¶7} Subsequently, RH submitted a claim to its insurer for damage to the fountain. In April 2013, after an investigation, the insurer denied the claim, and RH notified Frank about the lack of coverage. Frank then called Wallace to find out how RH was going to pay for the repairs. Wallace told him that RH was not going to pay for the damage to the fountain because the insurer had denied coverage.

{¶8} After Wallace told him RH would not pay for the repairs, Frank obtained estimates for the repairs and paid approximately $27,000 to repair the fountain that he had purchased for $22,000. He also filed a lawsuit against RH, setting forth claims for negligence and violations of the CSPA.

{¶9} Frank dismissed his original lawsuit but later filed this lawsuit alleging the same claims. RH moved for summary judgment on the CSPA claim,

arguing that the case involved damages to a decorative fountain that were proximately caused by RH's negligence, but that Frank had stated no legally actionable or factually meritorious violation of the CSPA.

{¶10} Frank opposed summary judgment. Of importance to this appeal, he contended that a genuine issue of material fact remained as to whether RH had engaged in an unfair, deceptive or unconscionable act or practice by failing to disclose to Frank when it agreed to move the fountain the limited scope of its insurance coverage; by telling him that the company would pay to repair the fountain, but then refusing to pay for the repairs; and by negligently unloading the fountain.

{¶11} The trial court determined that no material facts were in dispute and there was no way to construe those facts to support any claimed violation of the CSPA. After granting RH's motion for summary judgment on the CSPA claim, it certified in its partial judgment that there was no just cause for delay. Frank now appeals.

{¶12} Frank's sole assignment of error alleges the trial court erred by granting RH's motion for summary judgment, because genuine issues of material fact remained as to the alleged CSPA violations. He essentially contends that a reasonable fact finder could find for him and against RH on the claimed violations. Because the case was decided upon summary judgment, we review the matter de novo, applying the standards set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

## II.    Analysis

{¶13}    ***CSPA is a remedial law that prohibits unfair, deceptive, or unconscionable acts or practices***.  Ohio's Consumer Sales Practices Act is a remedial law, designed to compensate for inadequate traditional consumer remedies, and must be liberally construed to achieve its remedial purpose. *See Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990). Modeled after the Uniform Consumer Sales Practices Act, it provides "policies [for] protecting consumers from suppliers who commit deceptive and unconscionable sales practices and encourage[s] the development of fair consumer sales practices." *Crye v. Smolak*, 110 Ohio App.3d 504, 512, 674 N.E.2d 779 (10th Dist.1996), citing *Thomas v. Sun Furniture and Appliance Co.*, 61 Ohio App.2d 78, 81, 399 N.E.2d 567 (1st Dist.1978).

{¶14}    As relevant to this case, the CSPA prohibits suppliers from committing an unfair, deceptive or unconscionable act or practice in connection with a consumer transaction, "whether the act or practice occurs before, during, or after the transaction."   R.C. 1345.02(A) and 1345.03(A). There is no dispute that the transaction at issue in this case is a consumer transaction and that RH is a supplier as contemplated under the CSPA.

{¶15}    R.C. 1345.02(A) sets forth the general prohibition on unfair or deceptive acts or practices in connection with a consumer transaction. R.C. 1345.02(B) lists ten misrepresentations deemed to be "deceptive," and other subdivisions of R.C. 1345.02 specify additional conduct proscribed as unfair or deceptive.

5

{¶16}     Unconscionable acts and practices are prohibited by R.C. 1345.03. R.C. 1345.03(A) generally prohibits suppliers from committing an "unconscionable act or practice" in connection with a consumer transaction.     The term "unconscionable" is not defined, but R.C. 1345.03(B) contains a list of "circumstances" that should be considered when determining whether an act or practice is unconscionable.

{¶17}     In addition to the statutes, two other authorities can determine what constitutes a violation of the CSPA: (1) the rules adopted by the Ohio Attorney General and found in the Ohio Administrative Code and (2) the judiciary.  *See* R.C. 1345.05(B)(2) and (F); *Frey v. Vin Devers, Inc.*, 80 Ohio App.3d 1, 6, 608 N.E.2d 796 (6th Dist.1992).   To keep consumers, suppliers, and the legal community informed about the rights and responsibilities under the CSPA, the Attorney General is directed to "[m]ake available for public inspection * * * all judgments, including supporting opinions, by courts of this state * * * determining that specific acts or practices violate section 1345.02 [and] 1345.03[.]"   R.C. 1345.05(A)(3). These judgments and opinions that provide notice are published in the Online Public Inspection File ("OPIF") on the attorney general's website.   *See* https://opif.ohioattorneygeneral.gov.

{¶18}     The inclusion of a judgment in the OPIF file, however, does not mean that the judgment is actually a judgment of a court determining, and thus establishing, what is a CSPA violation.  Some judgments made available in OPIF are consent judgments that articulate the parties' agreement that a violation has occurred, but are not judgments based on a judicial "determination" that a violation has occurred.  *See Vuyancih v. Jones & Assocs. Law Group., L.L.C.,* 2018-Ohio-685,

95 N.E.3d 458, ¶ 13-15 (8th Dist.2018), citing *Pattie v. Coach, Inc.*, 29 F.Supp.3d 1051, 1056 (N.D.Ohio 2014); *see also Save the Lake v. Hillsboro*, 158 Ohio App.3d 318, 2004-Ohio-4522, 815 N.E.2d 706 (4th Dist.) (explaining that while a consent judgment, or agreed judgment, has the effect of a final judgment, it is a contract founded upon the agreement of the parties in which the defendant admits liability). *But see Charvat v. Teletytics, L.L.C.*, 10th Dist. Franklin No. 05AP-1279, 2006-Ohio-4623 (holding that a consent judgment contains " 'an act or practice determined by a court' " to violate the CSPA).

{¶19} Ultimately, the lack of any prior administrative or judicial rule or determination providing notice that a specific act or practice is unfair, deceptive, or unconscionable does not preclude a trial court from determining, based on the evidence, that an act or practice is unfair, deceptive, or unconscionable. *Hamilton v. Ball*, 2014-Ohio-1118, 7 N.E.3d 1241, ¶ 36 (4th Dist.). But, generally, the lack of specific notice does affect the consumer's remedies for the violation. *See* R.C. 1345.09(B).

{¶20} *Unfair or deceptive acts or practices.* Frank maintains that reasonable minds could conclude that RH engaged in two unfair and deceptive acts: first, when it failed to disclose to Frank the limitations of its insurance before Frank hired RH to move the fountain, and second, when RH's employees misrepresented after the move that RH would pay to repair the fountain damaged during the move.

{¶21} Initially, we address Frank's allegations concerning the insurance nondisclosure. Frank cites no statute or code that specifically proscribes the conduct, contending instead that courts have determined that RH's specific conduct

7

was unfair and deceptive. In support, he cites three cases: *Brown v. Van Walsen*, Franklin C.P. No. 75CV-05 2013 (Nov. 5, 1979) (OPIF No. 10000004); *Anderson v. Ace Brothers Moving and Storage*, Franklin C.P. No. 90CVH12-9780 (date unclear) (OPIF 10000219); and *Martino v. Wells Moving & Storage*, Warren C.P. No. 03CV60923 (Jan. 8, 2004) (OPIF No. 10002212).

{¶22} *Van Walsen* involved an action for injunctive relief brought by the Ohio Attorney General against a moving company. The parties entered into a consent judgment that required the moving company to "affirmatively disclose, at the time of initial contact with a consumer in regard to moving and/or storage services, any and all limitations on the liability insurance carried by [the moving company], the significance of such limitations and the availability of the cost of greater insurance coverage." The case, however, was resolved by a consent judgment and is not considered a decision by a court, s*ee Vujancih*, 2018-Ohio-685, 95 N.E.3d 458, at ¶ 13-15, and also involved licensing issues not raised in this case.

{¶23} The second case, *Anderson*, involved an action for damages and injunctive relief brought by customers of a moving company. In the trial court's "Agreed Entry of Judgment," the court, "by agreement of the parties," found the moving company, "by representing to customers that the business was bonded and insured, when such was not the case, ha[d] committed unfair and deceptive acts in violation of the Revised Code Section 1345.02(A)," and ordered monetary damages and injunctive relief. This "agreed entry of judgment" appears to be in effect a consent judgment. Further, the case is distinguishable from Frank's case because the defendant-mover in *Anderson*, unlike RH, made a *false representation* that the business was bonded and insured and actually carried no insurance.

{¶24}     The third case Frank cites, *Martino*, involved a judicial determination that a moving company violated the CSPA, but the case does not involve a violation based on an omission or misrepresentation with respect to the moving company's insurance coverage.  Consequently, Frank's position, that it has been judicially determined that RH had acted unfairly or deceptively, is unfounded, because none of the cited cases has the force of a judicial determination relating to the claimed violation.

{¶25}     Next, we review whether there are any material facts in dispute and, if not, when the facts are construed most favorably to Frank, reasonable minds could conclude, based on the alleged conduct, that RH had acted unfairly or deceptively when it failed to disclose to Frank the scope of its insurance coverage at the outset of the transaction.

{¶26}     The gravamen of Frank's complaint is that the challenged act was deceptive.  To determine whether an act or practice is deceptive, the question is whether the supplier did or said something, regardless of intent, that has the likelihood of inducing in the mind of a consumer a belief that was not in accordance with the facts.  *Frey*, 80 Ohio App.3d at 6, 608 N.E.2d 796, cited in *Lump v. Best Door & Window, Inc.*, 3d Dist. Logan Nos. 8-01-09 and 8-01-10, 2002-Ohio-1389, *4.  *See Shumaker v. Hamilton Chevrolet, Inc.,* 184 Ohio App.3d 326, 2009-Ohio-5263, 920 N.E.2d 1023, ¶ 19 (4th Dist.).   But the consumer's perceptions must be reasonable in light of the circumstances.  *Shumaker* at ¶ 19; *Struna v. Convenient Food Mart*, 160 Ohio App.3d 655, 2005-Ohio-1861, 828 N.E.2d 647, ¶ 15 (8th Dist.), citing *Conley v. Lindsay Acura*, 123 Ohio App.3d 570, 575, 704 N.E.2d 1246 (10th Dist.1997); *Knoth v. Prime Time Marketing Mgmt., Inc.*, 2d Dist. Montgomery No.

20021, 2004-Ohio-2426, ¶ 31. Ultimately, the CSPA is designed "to protect a consumer from a supplier's deceptions and curtail unscrupulous acts of suppliers," not place unreasonable and "undue burdens on suppliers." *Eisert v. Kantner Constr.*, 3d Dist. Auglaize No. 2-10-13, 2010-Ohio-4815, ¶ 30.

{¶27} Although Frank averred that RH's failure to disclose the scope of its insurance had induced him to hire RH to move the fountain, it is undisputed that he had not asked Wallace about insurance coverage before hiring RH for the move, and that Wallace made no misrepresentations concerning RH's insurance with respect to the move of the fountain. Further, it is undisputed that RH's website contained no representations about the scope of RH's insurance, and that RH's only prehiring statement to Frank about its insurance, provided months earlier, was vague and involved a different transaction. Finally, Frank does not allege that RH had failed to obtain insurance that was required by law, conduct that the legislature has specifically deemed an unfair or deceptive act or practice. *See* R.C. 1345.02(G).

{¶28} Based on this record, we determine no material facts are in dispute and that no reasonable trier of fact could conclude that RH's silence on the issue of its insurance would likely induce in Frank's mind a belief that RH did have insurance for the damage that was subsequently incurred. Our determination might be different if the facts showed that RH had repeatedly or in a more contemporaneous transaction told Frank that the company had "full coverage" insurance. Because it would not be reasonable for Frank to be induced by RH's silence under the circumstances presented, we hold that RH's silence was not an unfair or deceptive act or practice under the CSPA.

{¶29}     Frank argues too that a reasonable trier of fact could determine that RH's unfulfilled promise that it would pay for the repairs was unfair and deceptive.  We agree.

{¶30}     It is undisputed that RH's highly-touted employee Jackson told Frank immediately after the move that RH would pay for the repairs and that Frank was reassured the next day, during a conversation with another employee, that RH had insurance that would cover the repairs.   RH argues that Frank's claim fails because there are no facts in the record supporting a finding that RH knew its representations were misleading.  However, it is settled law that intent to deceive is not a necessary element of a claimed violation of R.C. 1345.02.  *Sun Furniture*, 61 Ohio App.2d at 81, 399 N.E.2d 567; *Lump*, 3d Dist. Logan No. 8-01-09, 2002-Ohio-1389, citing *Frey*, 80 Ohio App.3d 1, 608 N.E.2d 796.  Thus, RH's knowledge is not relevant to the initial determination that RH committed an unfair or deceptive act as contemplated by R.C. 1345.02(A).

{¶31}     RH also contends the false statement about paying for the repairs was insufficient because it involved a matter merely incidental to the transaction, citing *Richards v. Beechmont Volvo*, 127 Ohio App.3d 188, 711 N.E.2d 1088 (1st Dist.1998).  In *Richards*, a car dealership, when servicing a customer's car, removed the customer's license plate frames and, without the customer's knowledge or consent, replaced them with frames bearing the name of the dealership.  *Id.* at 189. The consumer sued, claiming the dealership had committed a deceptive and unconscionable act under the CSPA.  *Id.*  The trial court granted summary judgment to the dealership.  *Id.* at 190.  This court affirmed, characterizing the switch-out a "minor, incidental situation," and explaining that "[a]lthough the replacement of the

plate frames could arguably constitute a conversion, that act is not inextricably intertwined with the consumer transaction itself [to the warranty repair and other services performed on the car] and does not have the capacity or tendency to deceive." *Id.* at 191.

{¶32} RH argues that *Richards* governs because its statements to Frank about paying for the damages were not material, and thus inducing, to any choices Frank made with respect to the consumer transaction. The *Richards* case, however, is not similar to this case, which involves an actual misrepresentation by RH involving its payment for repairs of a fountain it damaged when providing a moving service for Frank. Because the fountain was the subject of the consumer transaction, this misrepresentation concerning Frank's remedy for the damage caused during move was not completely incidental to the move, but was "inextricably intertwined" with the consumer transaction. A deceptive act in connection with a consumer transaction is actionable even if it occurs at the end of the transaction. *See* R.C. 1345.02(A) (providing that a deceptive act is actionable "whether it occurs before, during, or after the [consumer] transaction").

{¶33} Moreover, the misrepresentations were made before Frank had paid for the service, and he testified that those representations induced him to remit full payment to RH the day after the move because he believed RH would pay for the repairs. Frank's belief could be found reasonable, and as a result, these misrepresentations are actionable under the CSPA as an unfair or deceptive act or practice.

{¶34} *Unconscionable acts or practices*. In Frank's final argument in support of reversing summary judgment, he claims that a genuine issue

12

of material fact remains as to whether RH committed an unconscionable act or practice in violation of R.C. 1345.03(A). In determining whether an act or practice is unconscionable, a court must consider the factors, set forth in R.C. 1345.03(B), which generally sanction acts and practices of suppliers that "manipulat[e] a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24, quoted in *Hathorn v. Dana Motor, LLC*, 1st Dist. Hamilton No. C-150363, 2016-Ohio-5110, ¶ 19.

{¶35}    Frank contends that RH, by engaging in deceptive acts, such as falsely indicating that it would pay to repair his fountain with insurance proceeds, also engaged in unconscionable acts and practices.

{¶36}    While deceptive conduct may also be deemed to constitute an unconscionable act, the law is clear that to establish an unconscionable act or practice, the consumer must show a degree of knowledge sufficient to establish scienter. *State ex rel. Celebrezze v. Ferraro*, 63 Ohio App.3d 168, 173, 578 N.E.2d 492 (2d Dist.1989), citing *Bierlein v. Bernie's Motor Sales, Inc.*, 2d Dist. Montgomery No. 9590, 1986 WL 6757 (June 12, 1986); *Sun Furniture*, 61 Ohio App.2d at 80, 399 N.E.2d 567. *See Clayton v. McCary*, 426 F.Supp. 248, 261 (N.D.Ohio 1976). This " 'actual awareness may be inferred where objective manifestations indicate that the individual acted with such awareness.' " *Bierlein* at *6, quoting R.C. 1345.01(E).

{¶37}    Our record contains no evidence from which it can be inferred that RH had knowledge that it was misrepresenting the facts, and Frank does not argue otherwise. RH believed it had insurance coverage and intended to use the insurance

proceeds to pay for the cost of the repairs.  Therefore, RH's misrepresentation that it would pay to repair the fountain with insurance proceeds is not actionable as an unconscionable act or practice.

{¶38}     Next Frank argues that RH's negligence when moving the fountain, a one-time event, constitutes "a pattern of inefficiency and incompetency" that constitutes an unconscionable act or practice, especially because RH had represented that it would provide "white-glove service."    Courts have held that a supplier's consistent inefficient and incompetent repair of the subject of a consumer transaction can be an unconscionable act in violation of R.C. 1345.03(A).  *Perkins v. Stapleton Buick-GMC Truck, Inc.*, 2d Dist. Clark No. 2001 CA 10, 2001 WL 669565 (June 15, 2001), citing *Brown v. Lyons*, 43 Ohio Misc. 14,  25, 72 O.O.2d 216, 332 N.E.2d 380 (C.P.1974) (OPIF 10000304).

{¶39}     Frank, however, has not presented any facts demonstrating the requisite pattern central to this violation.  Consequently, RH's sole instance of negligence in moving the fountain does not fall within the proscribed conduct and does not constitute a pattern of inefficiency and incompetency that constitutes a violation of R.C. 1345.03(A).

{¶40}     Finally, Frank argues that reasonable minds could determine that RH stalled and evaded its legal obligation to Frank, in violation of R.C. 1345.03(A). "A supplier in connection with a consumer transaction who * * * continually stalls and evades its legal obligation to a consumer[] commits an unconscionable act." *Brown* at 21, cited in *Lump*, 3d Dist. Logan No. 8-01-09, 2002-Ohio-1389, at *5, and *Daniels v. True*, 47 Ohio Misc.2d 8, 10, 547 N.E.2d 425 (M.C.1988).

{¶41}    In *Brown*, among other things, the supplier concealed his true identity from consumers by using fictitious names, frequently changed the names and locations of his business, failed to answer his phone for unreasonable lengths of time, failed to return calls to consumers, and sold defective merchandise for which he failed to honor warranties. *Brown* at 17-18. In *Daniels*, the supplier "falsely held himself out as a corporation, listed his address at a location he had not occupied over three years, and failed to respond to repeated phone calls and messages regarding" the construction of a garage, which the supplier never completed after accepting payment. *Daniels* at 10.

{¶42}    Frank contends that RH's statements that it would pay for the repairs and that it had insurance to do so, followed by its later refusal to pay for the repairs, which necessitated this lawsuit, established that RH continually stalled and evaded its legal obligation to him. But unlike in *Brown* and *Daniels*, the evidence here is not sufficient to support an inference that RH was continually stalling or evading its legal obligation to Frank. Instead, the record shows that RH was attempting to satisfy any legal obligation, but was unaware that it lacked insurance to pay for the repairs. The extent of RH's legal obligation to Frank for its negligence when moving the fountain will be determined at trial, including whether that obligation includes damages in an amount exceeding the cost of the fountain.

### III.    Conclusion

{¶43}    A genuine issue of material fact exists regarding whether RH violated the deceptive acts or practices provision of the CSPA by representing to Frank, before Frank paid for RH's services related to the move of the fountain, that RH would pay to repair the fountain that was damaged by RH's employees during

the move, and then later refusing to pay for the repair after learning it lacked insurance coverage for the repair. Accordingly, we sustain Frank's sole assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

**BERGERON, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.